UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

JOHN A. GRIECO,

Plaintiff,

v.                          4:12-cv-195

TECUMSEH PRODUCTS COMPANY and TECUMSEH COMPRESSOR COMPANY,

Defendants.

## ORDER

### I. INTRODUCTION

Before the Court is Tecumseh Products Company's and Tecumseh Compressor Company's ("Tecumseh") motion to exclude plaintiff's witness, ECF No. 24, and Motion for Summary Judgment. ECF No. 25.

Tecumseh argues that the Court should exclude Travis Browning's testimony as that of an unqualified expert with unreliable opinions. ECF No. 24 at 1, 4-5. The Court agrees that Browning lacks the necessary qualifications and so *GRANTS* Tecumseh's motion to exclude.

Tecumseh then contends that summary judgment is appropriate on all ten of Grieco's claims. ECF No. 25 at 3. The Court *GRANTS IN PART AND DENIES IN PART* Tecumseh's motion.

### II. BACKGROUND

On July 22, 2010, Grieco worked to repair a Tecumseh compressor unit on the walk-in cooler of Charley's Subs in the Savannah Mall. ECF No. 25 at 1. Grieco verified power to the unit and then turned the circuit breaker to off. *Id.* He saw burned wires at the connection point to the thermal protector on the compressor and subsequently discovered that the thermal protector was also burned. *Id.* at 2. Grieco installed several new components on the cooler, including a terminal protector, start capacitor, and a compressor relay. *Id.* Grieco then turned on the unit. *Id.* The compressor caught fire and blew out flames, burning Grieco's hair, shoulder, and arms. *Id.*

The compressor had a warning sticker attached to its exterior. *Id.* The sticker cautioned of burns from terminal venting on the compressor. *Id.* Grieco did not read this warning when he saw the sticker. ECF No. 25-1 at 6.

Grieco filed this lawsuit in July, 2012 alleging ten products liability and breach of warranty claims. ECF No. 1 at 6-12.

### III. DISCUSSION

The Court's analysis proceeds in two parts. First, it addresses Tecumseh's motion to exclude Grieco's expert witness. And second, it evaluates Tecumseh's motion for summary judgment.

#### A. **Tecumseh's Motion to Exclude**

Federal Rule of Evidence 702 governs the admissibility of expert testimony and states that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: . . . (c) the testimony is the product of

reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id.* The district court possesses a gatekeeping function in evaluating the reliability of expert testimony. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). The party offering the expert testimony must prove by a preponderance of the evidence that the expert is qualified and that the testimony is reliable. *Id.* at 1292. Nevertheless, the Eleventh Circuit recognizes a clear "conceptual distinction between an expert's qualifications and the reliability of" his testimony. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1342 (11th Cir. 2003).

Although federal law controls the admissibility of evidence in cases of diversity, *McDowell v. Brown*, 392 F.3d 1283, 1294 (11th Cir. 2004), state law, as the progenitor of products liability and warranty claims, has something to say about the substantive qualifications an expert must have in those areas.

1. *Browning's qualifications and methodology*

"Browning is a self-employed mechanical contractor and consultant," ECF No. 24 at 7, specializing in "deconstructive forensics"[1] for the past twenty-nine years. *Id.*; ECF No. 27 at 2. A self-described generalist in mechanical air-conditioning, refrigeration, heat transfer, and fluid transfer systems, Browning has limited experience in the design and manufacture of compressors.

*Id.* In fact, Browning has never manufactured a compressor, designed a compressor, or worked for a company that does either. ECF No. 24-2 at 28-29.

Browning is a high-school graduate but never attended college, much less an engineering school. ECF No. 24 at 7. Browning claims to have a "life experience degree" from Alameda University, but he admits, "[y]ou don't actually have to take a test or anything." ECF No. 24-2 at 26-27. At Alameda, graduates need only "show them [their] years of experience" in order to "graduate." *Id.* Browning does, however, have at least two professional certifications on specific products: advanced-state electronics from Scotsman Ice Systems and compressors from Carlyle. ECF No. 24-2 at 20.

Browning is "new in the consulting business," has never testified as an expert witness in a case involving a compressor, and admits he is not a warnings expert. *Id.* at 5, 17-18, 54.

The methodology Browning used to develop his testimony here consisted of comparing the placement of the compressor terminals relative to the bottom oil sump in a variety of manufacturers' compressors. ECF No. 24-2 at 44-45. He found that comparable Copelands [sic] and Bristol models have terminals higher up in the crankcase than Tecumseh's compressors. *Id.* at 44. Danfoss and Embraco compressors have terminals positioned similarly to the Tecumseh model in question. *Id.* at 45.

---

[1] "Deconstructive forensics" means nothing more than taking things apart to see what failed.

2

2. *Expert qualifications and Georgia products liability law*

An expert testifying about product design defects in Georgia must be qualified to engage in a risk-utility analysis. *Folsom v. Kawasaki Motors Corp.*, 509 F. Supp. 2d 1364, 1378 (M.D. Ga. 2007) (citing *Dean v. Toyota Indus. Equip. Mfg., Inc.*, 540 S.E.2d 233, 237 (Ga. Ct. App. 2000)). In other words, an expert on design defects must have the knowledge, skill, experience, training, and education to discuss the inherent risks, utility, and benefits of a product. *Id.*

Factors relevant to the risk-utility analysis include "the usefulness of the product; the gravity and severity of the danger posed by the design; the likelihood of that danger, the avoidability of the danger . . . the ability to eliminate danger without impairing the usefulness of the product or making it too expensive . . . the feasibility of an alternative design; the availability of an effective substitute for the product which meets the same need but is safer; the financial cost of the improved design; and the adverse effects from the alternative." *Banks v. ICI Ams., Inc.*, 450 S.E.2d 671, 675 n.6 (Ga. 1994).

Tecumseh argues that (1) although Browning has practical experience with maintenance of compressor systems, he has no experience with the design or manufacturing of such systems, ECF No. 24 at 9; (2) Browning is not an engineer and lacks such education, *id.* at 8; and (3) that Browning himself admitted that he is unqualified as a warnings expert. *Id.*

Grieco contends that proven experience in a trade or business is sufficient to qualify a witness as an expert, and thus that Brownings's experience with compressors renders him personally familiar with their design differences. ECF No. 27 at 5, 7. Coupled with Browning's professional certifications, Grieco argues that Browning's experience qualifies him to testify about compressor designs. *Id.* at 7. The Court disagrees.

By his own admission, Browning is not qualified as a warnings expert. ECF No. 24-2 at 54. Browning has no engineering education. ECF Nos. 24 at 7; 24-2 at 26-27. His professional trainings are not in product design or risk evaluation. *See* ECF No. 24-2 at 20. Browning may be experienced, skilled, and knowledgeable in system deconstruction, but he has never designed a compressor or worked for a company that designs compressors. *Id.* at 28-29. Ultimately, Browning's qualifications leave him ill-fit to testify about the inherent risks, utility, and benefits of compressors. *See Folsom*, 509 F. Supp. 2d at 1378 (citing *Dean*, 540 S.E.2d at 237).

Tecumseh cites to several cases that bolster that conclusion. In *Walker v. CSX Transportation Inc.*, the Eleventh Circuit affirmed the exclusion of a witness as unqualified. 650 F.3d 1392, 1397 n.19 (11th Cir. 2011). While the purported expert had "significant experience" working in the railroad industry, he had infrequent exposure to the apparatus in question, was not an engineer, and had never investigated an accident involving the bulkhead door of a railroad car. *Id.*

3

So too in *Folsom*, where the court found that two professional, highly experienced personal watercraft riders lacked sufficient qualifications as experts under Rule 702 to testify as to the design of personal watercrafts. 509 F. Supp. 2d at 1377. Although the professional riders were experts in the operation of personal watercrafts, they were unqualified to compare designs of watercraft rudders. *Id.* at 1378.

Browning, like the excluded experts in *Walker* and *Folsom*, is highly experienced but lacks the education—namely, an engineering degree—that might compensate for his lack of design experience. Browning may have the experience to qualify him to testify about deconstruction of a compressor, or even how to assemble one. But nothing about his experience gives him the knowledge or skill necessary to testify about compressor design, much like riding a jet ski did not give the supposed experts in *Folsom* the knowledge or skill necessary to design one. *Folsom*, 509 F. Supp. 2d at 1377.

Having found Browning unqualified as an expert to engage in the Georgia risk-utility analysis for defectively designed products, the Court need not address the reliability of Browning's opinions. The Court therefore excludes Browning's testimony. With that evidence off the table, the Court turns to Tecumseh's Motion for Summary Judgment.

### B. Tecumseh's Motion for Summary Judgment

Tecumseh argues no dispute exists as to any material fact and, more specifically, insufficient evidence to support prima facie cases for some claims. The Court groups the claims into five categories and analyzes each separately: defective design; defective manufacturing; defective warning; negligence claims; and warranty claims.

#### 1. *Standard of Review*

"Summary judgment is appropriate when the record evidence, including depositions, sworn declarations, and other materials, shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (quoting Fed. R. Civ. P. 56(a)). All evidence and factual inferences, however, must be viewed "in the light most favorable to the non-moving party," and "all reasonable doubts" resolved in his favor. *Id.* Nevertheless, should the moving party meet its initial burden to point out the absence of evidence supporting an essential element on which the non-moving party bears the burden of proof, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). With that review lens established, the Court turns to an evaluation of Grieco's claims.

#### 2. *Defective Design Claim*

Georgia courts recognize three forms of product defects: manufacturing, design, and marketing/packaging. *Banks*, 450 S.E.2d at 672. For design defects, courts ask whether a defendant failed to adopt a reasonable alternative design which would have reduced the foreseeable risks of harm

4

presented by the product. *Jones v. NordicTrack, Inc.*, 550 S.E.2d 101, 103 (Ga. 2001); *see also Banks*, 450 S.E.2d at 675 n.6 (setting out a series of factors for balancing risk and utility).

Tecumseh argues that Grieco fails to prove any reasonable alternative design. ECF No. 25 at 5. Tecumseh also contends that Grieco failed to present any evidence of a safer alternative design which would have prevented injury. *Id.*

Grieco's only on-point evidence came from Browning's testimony, which the Court has excluded. The record is barren of any other evidence as to a reasonable alternative design. Grieco cannot raise a genuine dispute of fact and therefore the Court grants summary judgment on his defective design claim.

### 3. *Defective Manufacturing Claim*

A product has a manufacturing defect if it deviates from properly manufactured items of the same line. *Banks*, 450 S.E.2d at 733-34.

Tecumseh argues that Grieco has abandoned his manufacturing defect claim, or alternatively, that the claim fails as a matter of law. The Court disagrees that Grieco has abandoned the claim, but finds the record devoid of evidence to support his claim.

Browning initially contended that Tecumseh "was negligent in manufacture due to its using a rubber-like material to seal the terminal area." ECF No. 25 at 6. Browning subsequently retracted that statement in his deposition. ECF No. 24-2 at 47-48. No other evidence supports the manufacturing defect claims and Tecumseh has met its burden to point out that absence. Grieco's manufacturing defect claims therefore fail as a matter of law.

### 4. *Defective Warning Claim*

A seller's duty to warn may be breached in one of two ways: "by (1) failing to adequately communicate the warning to the ultimate user or (2) by failing to provide an adequate warning of the product's risks." *Wilson Food Corp. v. Turner*, 460 S.E.2d 532, 534 (Ga. Ct. App. 1995). A failure to communicate a warning can involve issues like the "location and presentation of the warning." *Id.* The failure to adequately warn, by contrast, depends upon the substance of the warning. *Id.* Proximate cause is a necessary element for both forms of warning defect claims. *See id.*

Tecumseh argues that Grieco's failure to read the warning label entitles it to summary judgment on these claims. ECF No. 25 at 7-8. Grieco admitted in his deposition that he did not read the warning when he installed the machine (in 2009, prior to the accident) and contends that he could not read the warning on the date of the accident because of the placement of the warning label. ECF No. 25-1 at 5-7.

The Court cannot grant summary judgment against Grieco's failure to communicate claim. "[F]ailure to read a warning does not bar recovery when the plaintiff is challenging the adequacy of the efforts of the manufacturer or seller to communicate the dangers of the product to the buyer or user." *Camden Oil Co. v. Jackson*, 609 S.E.2d 356, 359 (Ga. Ct. App. 2004). Actually, Grieco's "failure to read

5

the warning may be circumstantial evidence of the inadequacy of the warning." *Id.* The position, color, size, and print of the warning label will be factual matters for a jury to consider in deciding whether Tecumseh failed to adequately communicate the dangers of the compressor. *Id.*

Although Grieco's failure to read the warning may enhance his failure to communicate claim, it fatally undermines his claim that the warning itself was inadequate. *Id.* at 358 ("[W]here a plaintiff does not read an allegedly inadequate warning, the adequacy of the warning's contents cannot be a proximate cause of the plaintiff's injuries . . . ."). So, Grieco's defective warning claim survives Tecumseh's motion for summary judgment, but Grieco will only be allowed to present to the jury a theory of inadequate communication of the warning.

### 5. *Negligence Claims*

Grieco asserts additional claims for general negligence, negligent testing, negligent failure to instruct, and negligent failure to advise the consuming public of attendant hazards. ECF No. 1 at 6, 8-10. None survive summary judgment.

General negligence is a theory of liability in a products liability claim. It is not a stand-alone cause of action. "With respect to claims for manufacturing defects, marketing defects and inadvertent design defects, there is no difference between liability based on strict product liability and liability based on negligence." *Wheat v. Sofamor, S.N.C.*, 46 F. Supp. 2d 1351, 1360 n.8 (N.D. Ga. 1999). Grieco's stand-alone negligence claim fails.

Also, Georgia does not recognize a cause of action for negligent testing. *Villegas v. Deer & Co.*, 135 F. App'x 279, 281 (11th Cir. 2005). Because a federal court sitting in diversity must apply the substantive law of the forum state, *Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, (1938)), the Court grants summary judgment in favor of Tecumseh on that claim.

Grieco's negligent failure to instruct claim fails for the same reason as the failure to provide adequate warning claim. "The alleged inadequacy of the installation instructions cannot be the proximate cause of the [accident and plaintiff's injury] when the installer did not read the installation directions . . . ." *Powell v. Harsco Corp.*, 433 S.E.2d 608, 610 (Ga. Ct. App. 1993). As with the failure to adequately warn claim, so too here—it fails.

Lastly, Grieco's negligent failure to advise the consuming public of attendant hazards claim is nothing more than a dressed-up version of the negligent failure to warn claim. A warning is "[t]he pointing out of a danger, especially to one who would not otherwise be aware of it." Black's Law Dictionary 1722 (9th ed. 2009). Warning the public is synonymous with advising them of attendant hazards. This claim also must perish.

### 6. *Warranty Claims*

Grieco claims Tecumseh breached its compressor's (1) implied warranty of merchantability; (2) implied warranty of fitness for a particular purpose; and (3)

express warranty. ECF No. 1 at 10-12. All three claims fail as a matter of law.

The Georgia Uniform Commercial Code creates an implied warranty of merchantability that goods be fit for the ordinary purposes for which such goods are used. O.C.G.A. § 11-2-314. But the Georgia Supreme Court has disapproved the fit-for-use test in evaluating design defects, *see Banks*, 450 S.E.2d at 674, favoring the risk-utility test. Thus, a product found defectively designed under the risk utility test will not necessarily give rise to a claim for breach of implied warranty of merchantability in Georgia. *Accord* J. Kennard Neal, Georgia Products Liability Law § 4:4 (4th ed. 2013).

Grieco argues the design defect is evidence of unfitness and cites to a Florida case predicated upon the Death on the High Seas Act and Federal Admiralty Law for support. *Shaw v. Grumman Aerospace Corp.*, 593 F. Supp. 1066, 1073 (S.D. Fla. 1984). This case has no relevant precedential value and Grieco provides no other evidence that the compressor was unfit for use. *See* ECF No 29 at 14-16. Grieco's implied warranty of merchantability claim therefore fails.

The Georgia Uniform Commercial Code also creates an implied warranty of fitness for a particular purpose. O.C.G.A. § 11-2-315. To show breach of this warranty, a plaintiff must prove that (1) the buyer had in mind a particular purpose for the goods; (2) the seller knew of this particular purpose; (3) the buyer relied on the skill or judgment of the seller to select or furnish the goods; and (4) the seller had reason to know of the buyer's reliance on the seller. *Id.*

Tecumseh only argues that the absence of a defect dooms the claim for breach of an implied warranty of fitness. ECF No. 25 at 10-11. But O.C.G.A. § 11-2-315 does not mandate a defect. Unfit means unable to fulfill the particular purpose, regardless of the presence of a defect. By conflating defect and fitness, Tecumseh fails to point out the absence of evidence supporting an essential element and so has not met its summary judgment burden. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Finally, a seller creates an express warranty under Georgia law when it makes any affirmation of fact or promise related to the goods, and the affirmation becomes part of the basis of the bargain. O.C.G.A. § 11-2-313(1)(a). Grieco alleges that Tecumseh breached an express warranty because it assured Grieco through oral statements, internet materials, and a written warranty that the compressor would work. ECF No. 1 at 11. Grieco has provided no evidence—or even further argument—to support those allegations. Like Grieco's implied warranty of merchantability, his express warranty claim fails.

## V. CONCLUSION

The Court finds that Browning is unqualified as an expert witness because he lacks sufficient knowledge, skill, experience, training, or education to testify about the inherent risks, utility, and benefits of the compressor. Therefore the Court

***GRANTS*** the motion to exclude Browning's testimony.

The Court ***GRANTS IN PART*** and ***DENIES IN PART*** Tecumseh's motion for summary judgment. The Court ***GRANTS*** summary judgment on Grieco's (1) design defect claim because Grieco presents no reasonable alternative designs for the compressor; (2) manufacturing defect claim because Grieco fails to present any evidence as to such a defect; (3) negligence claims; (4) breach of express warranty and implied warranty of merchantability claims; and (5) substantive inadequate warning theory because Grieco failed to read the warning label. The Court ***DENIES*** summary judgment on (1) Grieco's defective warning claim based on a theory of inadequate communication of the warning, and (2) Grieco's implied warranty of fitness for a particular purpose claim because Tecumseh fails to meet its burden on summary judgment by not demonstrating an evidentiary deficiency of any elements of the claim.

The parties are ***ORDERED*** to submit a joint pre-trial order within fourteen days of this order's filing.

This 23 day of October 2013.

*[signature]*

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA